COLUMBUS PRODUCTION CREDIT ASSOCIATION, APPELLEE, *v.* WEEKS, APPELLANT; METROPOLITAN LIFE INSURANCE COMPANY ET AL.

(No. 14-87-11—Decided October 7, 1988.)

*Porter, Wright, Morris & Arthur* and *Christopher D. Trail,* for appellee.

*Bradley & Farris Co., L.P.A.,* and *Philip R. Bradley,* for appellant.

GUERNSEY, J. This appeal originated as an appeal by defendants Harry D. Weeks and Judith A. Weeks

from a judgment of the Court of Common Pleas of Union County in favor of the plaintiff Columbus Production Credit Association ("PCA") on its complaint against them for recovery of principal and interest due on four notes payable by the defendants to PCA and in favor of PCA and against the said defendants on their counterclaim against PCA. Metropolitan Life Insurance Company of New York, BancOhio National Bank, Landmark, Inc., and the Treasurer of Union County, Ohio, were also joined as parties defendant by reason of interests which they might claim in the real property owned by the Weekses which is the subject matter of a mortgage securing one of the notes and, except for BancOhio National Bank, which has been dismissed as a party defendant, their interests have not been resolved by judgment, the trial court certifying that there was no reason to delay entry of the summary judgment to which this appeal, in part, pertains. After this appeal was filed, defendant Harry D. Weeks died and his appeal was dismissed. The only appellant is, therefore, Judith A. Weeks.

The judgment appealed from was reached in two stages. After issues were joined on the complaint of PCA and the counterclaim of defendants, PCA moved for summary judgment thereon and filed in support thereof the affidavit of Arthur G. Kilbourn, its vice-president, with copies of the four notes and the mortgage identified and attached as exhibits thereto. The Weekses filed their memorandum contra plaintiff's motion, which was supported by the affidavit of Harry D. Weeks. These two affidavits and attached exhibits were the only evidentiary matters before the lower court for its determination of the motion for summary judgment and based thereon, the lower court rendered summary judgment on September 20, 1985, "in favor of plaintiff against defendants Weeks on all issues raised by the counterclaim of defendants Weeks, and in favor of plaintiff and against defendant Weeks on all issues in its complaint except the dollar amounts due from defendants Weeks." Subsequently, an evidentiary trial was had as to the money amount due from defendants Weeks to PCA, resulting in the entry on May 15, 1987, of the money judgment against them and the notice of appeal from the two-part judgment filed by them on June 10, 1987, prior to the death of Harry D. Weeks.

The issues raised by this appeal involve the liability of Judith A. Weeks as a maker of the notes, and any reference hereafter to "defendant" shall apply to her. Any reference to "defendants" shall apply to her and her deceased husband.

The first four assignments of error are set forth and argued together by defendant and may be summarized as follows:

"Assignments of Error I and II. The trial court erred in granting summary judgment and holding that a contract, in the form of a promissory note, which on its face makes it impossible for the obligor to ever determine the extent of his obligation, and which has no limit as to that interest rate which may be charged, is not unconscionable or illusory, and is enforceable.

"Assignment of Error III. The trial court erred in granting summary judgment and holding that the plaintiff, an instrumentality of the United States, is not bound by the basic tenets of contract law.

"Assignment of Error IV. The trial court erred in granting summary judgment and holding that promissory notes which contain the language 'interest rates charged on loans of this type,' the purpose of said language being to define the interest rate which will be charged, [are] enforceable when

in fact said language has no meaning to the drafter of the notes.''

The first note given by defendants was secured by a mortgage on their real property and the only relevant interest provision in the note was "together with interest calculated in [*sic*] the unpaid principal balance at such rate as is from time to time charged by the payee on other loans of this type (the rate at present is 10¾%) until demand and thereafter at a rate of 2% higher than such rate on all amounts in default.''

The second note was an unsecured operating loan note and the only relevant interest provision therein was substantially the same as the mortgage note except that the parenthetical present rate was specified as fourteen percent.

The third note, also an unsecured operating loan note, prescribed "a rate that is equivalent to the sum of a base rate which is from time to time established by the payee to be charged on loans of this type plus four (4) percentage points (the rate at present is 12.7%) until demand or maturity, together with interest calculated thereafter at a rate which is two (2) percentage points higher than such rate on all amounts in default * * *. The base rate charged at any point in time shall never exceed the interest rate charged by the Federal Intermediate Credit Bank of Louisville at that point in time * * *.''

The fourth note, also an unsecured operating loan note, had relevant interest provisions identical to those of the third note, except that the parenthetical present rate of interest was specified as 12.75 percent.

PCA and the defendant are in substantial agreement that the pertinent provision of the federal Farm Credit Act of 1971 (Section 2075[c][3], Title 12, U.S. Code) authorizes institutions of the system to engage in variable rate lending. Section 2075(c)(3) provides in pertinent part:

"The loan documents may provide for the interest rate or rates to vary from time to time during the repayment period of the loan in accordance with the rate or rates currently being charged by the association.''

Defendant argues, based on the testimony of PCA's witness at the damage hearing, that the language used by the association in the notes has no meaning whatsoever, that all borrowers from the association were treated virtually identically with no comparisons or distinctions being made as to whether or not a loan was secured, or as to the relative strength or weakness of any securities, or as to the borrowers' payment history or creditworthiness, and that a borrower could never determine what interest rate he was being charged or the maximum rate that PCA might charge. Defendant argues further, in effect, that notwithstanding the authority of PCA to lend money at variable rates of interest, it was still bound under basic contract law to utilize contracts which are by their own terms sufficiently definite and certain as to be readily enforceable.

In our opinion, defendant's positions under these four assignments of error are not well-taken. In the first place, defendant raised these issues in the trial court and in this court not as they affect the calculation and determination of damages but wholly on the issue of liability of the defendants to PCA, *i.e.,* whether PCA can enforce the debt represented by the notes. That being so, defendant cannot now resort to the testimony of PCA's witness Sharpnack during the damage trial as evidence which determines whether the notes are unenforceable, but can only resort to the terms of the note themselves, and the statement of Harry Weeks in his affidavit filed in

the summary judgment proceeding that he was unable to discern at any given point of time the actual interest rate being charged him on the February 1979 loan and the March 1982 loan. That statement has no probative value because the determination of whether the interest provision is too indefinite or illusory as to be enforceable, or so unconscionable as to be enforceable, is not a determination which is made solely on whether the maker of the note is himself able to determine the interest rate.

Thus, in the summary judgment proceeding as to the issue of liability, the enforceability of the notes, absent relevant subjective facts appearing in affidavits (or in other evidentiary matters permitted by Civ. R. 56) filed by the defendants, became a question of law for the court to decide wholly from the provisions appearing on the face of the respective notes.

As we have already pointed out, the federal law permitted the notes to provide for variable rates of interest "from time to time during the repayment period of the loan in accordance with the rate or rates currently being charged by the association." This not only tended to limit the authority of the production credit associations as to the interest which they might charge, but determined the manner in which that interest be prescribed in the loan documents. Insofar as that provision conflicted, if it did, in any respect with state law, the federal law was paramount. *Lamb* v. *Opelika Production Credit Assn.* (Ala. 1979), 367 So. 2d 957, 959; see, also, *Marion Production Credit Assn.* v. *Cochran* (May 9, 1985), Morrow App. Nos. CA-618 and CA-620, unreported.[1] Obviously, neither a borrower, nor anybody else, could

determine from the face of the note alone the amount of interest being charged at any particular time, except the rate prevailing at the time of issue, but that does not mean that the interest rate at any other particular time was not determinable. The common denominator of each of the four notes was that the variable rate of interest at any particular time had reference to, and was equal to, or could be computed from, the interest rate as is from time to time charged by the association on other loans of this type and, as to the last two operating loan notes, at the rate not to exceed that charged by the Federal Intermediate Credit Bank of Louisville. Thus, the applicable variable interest rate on any particular loan could always be determined by inquiry directed to the association to find out what rate was being charged by the association on other loans of the same type, and the absolute lid thereon provided in the third and fourth notes could be determined by inquiry directed to the Louisville bank.

It is the inherent nature of variable interest rate loans authorized by the federal Farm Credit Act of 1971 that one cannot tell alone from the face of the loan documents the specific interest rate, or rates, of interest which will be payable throughout the term of the loan, and thus the dollars and cents total of the obligation, and it is in this aspect that federal law, permitting such obligations, is paramount and preemptive of any conflicting state law. It is our opinion that the basic requirements of contract definiteness, so that there is no illusory or unconscionable bargain, are met when the provisions of the loan as set forth in the contract documents prescribe a means for establishing and determining the rate of interest applicable to the loan at any specific time during its course. We are further of the opinion that Section 2096(b) of the federal Farm Credit

---

[1] For a later related case, see *Marion Production Credit Assn.* v. *Cochran* (1989), 40 Ohio St. 3d 265, 533 N.E. 2d 325.

Act, and the note provisions under consideration, do not require that the interest rate be different on different types of loans. They merely require that the rates of interest charged during the repayment period be equal on the loan concerned to those charged by the association on loans of that same type.

The defendant had relied strongly on the cases of *Preston* v. *First Bank of Marietta* and *Smith* v. *First Bank of Marietta* (1983), 16 Ohio App. 3d 4, 16 OBR 4, 473 N.E. 2d 1210, wherein, in a split decision, the court affirmed a judgment of the trial court in a case where the notes provided that the bank could increase or decrease the interest rates, and the trial court held that any rate but the original rate of interest was illegal and ordered the bank to recompute the loans at the original rate of interest. We find, however, that these cases are distinguishable from this appeal on several grounds. First, the primary issue there involved was the application of the federal Truth in Lending Act, rather than the federal Farm Credit Act of 1971, and because there were substantive violations of the Act the appellate court found no error in the trial court's decision that the bank failed to comply with the regulations. This conclusion tended to make any other conclusions by the appellate court of invalidity *obiter dictum.* Second, nevertheless, the provisions of the notes involved permitted, but did not require, the bank both to raise or decrease the interest rate, with no reference to any standard for doing so. Third, there was no provision set forth in the notes therein as to any top limit on the increase of the interest rate.

Indeed, in that portion of its opinion dealing with "variable rate mortgages in general" after citing various authorities, the *Preston* court concluded:

"Based on the foregoing, we must conclude that a variable rate mortgage contract is not, *per se,* illegal or unenforceable. But variable rate mortgage contracts must be, by their own terms, sufficiently definite and certain. To be enforceable they must adopt a standard by which the parties can readily ascertain the extent of their obligation at any given time." *Preston* v. *First Bank of Marietta, supra,* at 6, 16 OBR at 7, 473 N.E. 2d at 1214.

This is exactly the case here. The terms of the notes here, relative interest rate, not only permit, but require, the interest rate to be raised or decreased in conformity with such rate as is from time to time charged by the bank on other loans of the same type. Being tied to that rate any increase (or decrease) was limited by the rate from time to time charged on other loans of the same type, and the top interest rate on the latter two notes was further limited by the interest rate charged by the Federal Intermediate Credit Bank of Louisville. These provisions permitted the defendants here to readily ascertain the current extent of their obligation at any given time during its term.

Although our conclusions are based on the issue of liability as determined in the summary judgment proceedings, we are equally of the opinion that even if it were permissible to consider the testimony of witness Sharpnack given during the trial of the damage issue, we would have to arrive at the same conclusions, *i.e.,* that the notes are neither illusory, unconscionable nor unenforceable.

Accordingly, we find each of the first four assignments of error without merit.

The fifth and sixth assignments of error, which are set forth and argued together by defendant, may be summarized as follows:

"Assignment of Error V. The trial

court erred in granting summary judgment and holding that PCA, which induced the defendants to act to their detriment by promising to them to forgive certain interest payments, is not estopped from denying such promises.

"Assignment of Error VI. The trial court erred in granting summary judgment and holding that no genuine issue as to any material fact existed when there, in fact, was presented to the court, two opposing versions as to the existence of, and reliance on, certain promises regarding the forgiveness of certain interest payments bearing on estoppel and waiver defenses."

In their answer to the complaint, defendants alleged as defenses that "Plaintiff is estopped from asserting its claims," and "Plaintiff waived its claims." In his affidavit filed in support of plaintiff's motion for summary judgment, Arthur G. Kilbourn, Vice-President of plaintiff, asserted:

"13. THAT, Columbus PCA has never agreed or otherwise represented to Weeks that it was willing to release or waive their obligation to Columbus PCA.

"14. THAT, Columbus PCA did not, intentionally or otherwise, cause any default by Weeks."

In Harry Weeks' affidavit filed in opposition to PCA's motion for summary judgment it was asserted:

"8. That in July 1983 he and Arthur Kilbourn met at the office of attorney Philip R. Bradley. At that time, Kilbourn assured him that PCA would forgive the interest on the operating loan if he would sell his crop immediately and pay the monies to PCA. Other assurances were also made.

"9. That in July 1983, in reliance upon Mr. Kilbourn's assurances that no interest would be deducted, he sold his corn at a loss and made immediate payment to PCA. However, PCA reneged on its promise and continued to assess the interest charges.

"10. That in August 1983, Kilbourn and he met again at Philip R. Bradley's office. Once more he was assured by Kilbourn that the interest would be forgiven if Weeks sold his crops immediately and paid the proceeds to PCA.

"11. That the day following the August meeting, Kilbourn came to the field in which he was plowing and reasserted the promise to deduct the interest.

"12. That in reliance upon PCA's promise, he sold his beans at a loss and made immediate payment to PCA. This constituted an accord and satisfaction.

"13. That for the second time, PCA reneged on its promise to forgive the interest.

"14. That he would not have sold his crops at a loss but for the assurance from PCA that it would deduct the interest."

In its decision on the motion for summary judgment the trial court noted the two defenses of "estoppel to assert a claim," and "waiver of claims," and found:

"Defendants having admitted the execution of the notes and mortgages are bound by the terms thereof. The terms of the note and mortgage also contain the answers to the objections to application of payments and claimed waiver. See the paragraphs in each entitled non-waiver-remedies and waiver of demand."

Defendant's argument under these two assignments of error is confined to estoppel. She asserts, in effect, that the affidavits raised an issue of fact as to whether the promises were made, that the trial court could not on a motion for summary judgment resolve that issue of fact, and did not otherwise dispose of the defense of estoppel.

Reference to the mortgage note reveals the following provision therein agreed to by defendants:

"The undersigned, and all persons

now or hereafter liable, * * * jointly and severally * * * waive demand, presentment for payment protest, notice of protest and dishonor, notice of nonpayment of this note, and all other defenses. * * * No omission or delay respecting the exercise of any right or remedy by payee * * * shall constitute a waiver of any default, and no single or partial exercise of any right or remedy shall preclude other or further exercise thereof or of any other right or remedy."

A like provision is included in each of the notes given for the operating loans.

PCA concedes that the trial court did not discuss defendant's present assertion of estoppel, but claims that it was neither raised in argument to the trial court nor properly supported by affidavit, in any event, by an appropriate showing of detrimental reliance, in that if the alleged sale of the crops resulted in no loss when compared to a later sale of the crops there was no detrimental reliance on the part of the defendant and no injustice occurred. PCA further asserts that the affidavit of Harry Weeks merely addresses promises he claims were made to him and his reliance thereon, but evidences no promises made to, or any reliance of, Judith Weeks on such promises.

Examination of PCA's memorandum in support of its motion for summary judgment shows that it refers specifically to the defendants' third and fourth defenses of estoppel and waiver and asserts that they are answered by Kilbourn's affidavit that PCA "has never agreed or specifically represented to Weeks that it was willing to release Weeks or waive their obligations to PCA," and, accordingly, that the Weekses may no longer rest upon the mere allegations of their pleadings. Harry Weeks did respond thereto in his affidavit and though the memorandum filed by defendants in opposition to the motion for summary judgment did not specifically use the word "estoppel," it referred to the promises allegedly made by PCA and Harry Weeks' reliance thereon sufficiently that, on the whole, we conclude that the issue was raised to, and argued before, the lower court. In that the lower court then found in its decision that "there is no genuine issue of a material fact as gleaned from the pleadings and all Civ. R. 56(C) documents filed; that reasonable minds can come to but one conclusion, which conclusion is adverse to the defendants and that plaintiff is entitled to judgment as a matter of law"; we are compelled to conclude that notwithstanding that the trial court did not mention specifically that it decided the issue of estoppel, it did so as a matter of law, and did so contrary to the defendants.

In our opinion, although on the allegations of the affidavits a question of fact remained as to whether promises were made to Harry Weeks and thus relied upon by him in the sale of his crops, in no event is there any showing or any claim that like promises were made to Judith A. Weeks and relied on by her. As a matter of law no issue of fact existed relating to estoppel as to her and her defense of estoppel was not established by any affidavit relating to her. Even as to Harry Weeks, his affidavit was wholly indefinite as to what interest he claimed that PCA promised to forgive.

As to both defendants, however, the provisions of the notes waived "all other defenses" and thus precluded both defendants from successfully asserting the defense of estoppel.

Accordingly we find the fifth and sixth assignments of error without merit.

"Assignment of Error VII. The trial court erred in granting summary judgment and holding that defendants' defense of waiver was covered by the

terms of the promissory note and mortgage."

We make reference to our discussion of the fifth and sixth assignments of error as to the content of the lower court's decision as it relates to "claimed waiver," and as to the provisions of the notes relating to waiver of defenses. These note provisions are applicable, though the issue concerns waiver by PCA of its rights to interest, because the claim by defendant of such a waiver by PCA constitutes a defense. The issue then becomes whether by virtue of the provisions in the notes the defendants did, in turn, waive such defense.

The issue of fact was raised to the lower court by the allegations of Harry Weeks' affidavit that by misallocating interest payments made on the operating loans to the mortgage loan, PCA waived interest charges accruing during the period of allocation. These allegations were countered by the affidavit of Kilbourn. The court held, in effect, as a matter of law, that the note provisions precluded the assertion of such defense by the affidavits.

We too find the waiver of defense provisions of the notes broad enough to preclude the defendants from raising the defense of waiver by PCA of the interest charges in question. We are not concerned with the nonwaiver provisions in the mortgage cited by the plaintiff for the issue here involved is not of waiver of rights under the mortgage but of rights under the notes.

Defendant further asserts that should the note provisions provide as we have determined, then such provisions are unconscionable and therefore unenforceable. Even though the matter of conscionability was not raised in the lower court, we nevertheless find no basis for finding the waiver of defense provisions unconscionable in their application to the defendant.

We conclude that the seventh assignment of error is not well-taken.

"Assignment of Error VIII. The trial court erred in granting PCA $258,776.62 in damages as such was against the manifest weight of the evidence."

This assignment of error constitutes, in essence, a claim by the defendant that since the variable rates of interest were not provided for in the notes, plaintiff's recovery must be limited to the interest provided by statute, specifically, six percent per annum on money due and payable prior to July 5, 1982, and ten percent per annum thereafter, R.C. 1343.03(A).

Defendant rehashes her contentions, heretofore disposed of, as to the illusory character and invalidity of the variable interest charges provided for by the notes, and contends that it was incumbent upon plaintiff in the damage stage of the proceedings to establish that the charges made were consistent with PCA's interest charges for this type of loan and inconsistent with its interest charges for other types of loans.

At trial PCA placed its special accounts officer Sharpnack on the stand and he testified as to the interest charges which were actually made from statements of account which were received in evidence without objection. Defendants offered no evidence as to the inaccuracy of the account entries, and rested without calling any witnesses of their own.

Thus, the evidence offered was sufficient to sustain the court's verdict and money judgment, and the eighth assignment of error is not well-taken.

Having found no error prejudicial to the appellant, Judith A. Weeks, the judgment of the lower court must be affirmed, and the cause remanded to the lower court for further proceedings on the issues remaining before that court as to foreclosure and as to other parties.

*Judgment affirmed and
cause specially remanded.*

MILLER, P.J., and COLE, J., concur.

J. THOMAS GUERNSEY, J., retired, of the Third Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.